IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO.: 2:11-CR-191-MHT |
| | ) |
| CHRISTOPHER D. ALLOWAY | ) |

**SENTENCING POSITION OF DEFENDANT CHRISTOPHER ALLOWAY**

COMES NOW the undersigned counsel, Patricia Kemp, on behalf of the Defendant, **CHRISTOPHER D. ALLOWAY**, and files this sentencing position according to this Court's Order, Document No. 562. It is Mr. Alloway's sentencing position that his post-sentencing conduct should not preclude him from receiving a sentence reduction, or limit the reduction he is eligible to receive under U.S. Sentencing Guideline Amendment 782 and Section 1B1.10.

**I.     Relevant Procedural History**

On November 8, 2011, Mr. Alloway and several other co-defendants were charged in a 26 count federal indictment with conspiracy to distribute drugs.[1] Mr. Alloway was named in Counts 1, 16, 17, and 18 of the indictment.[2] On May 14, 2012, under the terms of a plea agreement, he pleaded guilty to Count 1 of the indictment, charging him with conspiracy to distribute powder cocaine and crack cocaine, in violation of 21 U.S.C. §846.[3]

The federal probation officer determined that Mr. Alloway was responsible for between 280 and 840 grams of crack cocaine, which corresponded to a base offense level of 32, under the 2011 U.S. Sentencing Guidelines Manual.[4] Two offense levels were deducted, under U.S.S.G.

---

[1] Doc. 1.
[2] Doc. 400, ¶1.
[3] Doc. 251; Doc. 400, ¶2.
[4] Doc. 400, ¶17.

1

§5C1.2(a)(1) through (5), governing the "Limitation on Applicability of Statutory Minimum Sentences in Certain Cases."[5] Two additional levels were deducted, under U.S.S.G. §3E1.1(a), because Mr. Alloway accepted responsibility for his offense.[6] Mr. Alloway's total offense level was 28, and at criminal history category I, the federal probation office determined that Mr. Alloway's applicable Guideline range was 78 to 97 months imprisonment.[7]

Mr. Alloway was sentenced on August 15, 2012. During that sentencing hearing, this Court agreed with the Sentencing Guideline calculations in Mr. Alloway's Presentence Report, finding that Mr. Alloway's total offense level was 28, his criminal history category was I, and his applicable Guidelines range was 78 to 97 months imprisonment.[8] This Court further reduced Mr. Alloway's total offense level to 26 and his applicable Guideline range to 63 to 78 months' imprisonment based on a downward departure for his substantial assistance, under U.S.S.G. 5K1.1.[9] Mr. Alloway was sentenced to 63 months, which was the bottom of the Guideline.[10]

On July 16, 2015, Mr. Alloway filed a motion for a sentencing reduction under 18 U.S.C. §3582 and U.S.S.G. Amendment 782.[11] On October 22, 2015, he filed a motion to expedite a ruling on his motion for a sentence reduction.[12] On November 12, 2015, the Federal Defenders Office was appointed to represent Mr. Alloway.[13] On November 16, 2015, this Court ordered the Federal Defenders Office to file a sentencing position regarding whether Mr. Alloway's post-sentencing

---

[5] Doc. 400, ¶18.
[6] Doc. 400, ¶24.
[7] *Id*. at ¶¶ 24, 29, 45.
[8] Doc. 404, Statement of Reasons.
[9] *Id.*
[10] Doc. 404.
[11] Doc. 542.
[12] Doc. 547.
[13] Doc. 557.

conduct precludes him from receiving a sentence reduction, or limits the reduction he is eligible to receive under U.S. Sentencing Guideline Amendment 782 and Section 1B1.10.[14]

## II.     Argument and Citation of Authority

### A. Mr. Alloway's post sentencing conduct neither prevents this Court from granting him a sentence reduction nor limits the reduction he can receive.

"A district court must engage in a two-step analysis when considering a motion for a sentence reduction under § 3582(c)(2)."[15] "First, the court must determine the sentence it would have imposed given the defendant's amended guideline range and holding all other guideline findings made at the original sentencing hearing constant."[16]

At the time of Christopher Alloway's 2012 sentencing, he was held responsible for between 280 and 840 grams of crack cocaine. Under the current Sentencing Guideline Manual, this drug quantity corresponds to a base offense level of 30. After the original offense level adjustments are made (minus two under §5C1.2(a)(1) - (5) and minus two under §3E1.1), Mr. Alloway's offense level becomes 26. After the offense level is adjusted downward by two levels to reflect the substantial assistance downward departure made at the time of the original sentencing, Mr. Alloway's amended total offense level is 24. At criminal history category I, Mr. Alloway's amended Sentencing Guideline range is 51 to 63 months of imprisonment. Under Amendment 782 and 18 U.S.C. §3582(c)(2), this Court has the authority to sentence Mr. Alloway to 51 months imprisonment.

"Second, the court must consider the factors in 18 U.S.C. § 3553(a) and then determine, in its discretion, whether to reduce the defendant's sentence."[17] "If a court decides that a defendant

---

[14] Doc. 562.
[15] *United States v. Vives*, No. 15-10311, 2015 WL 5062307, at *1 (11th Cir. Aug. 28, 2015)
[16] *Id.* at *1 (citing *United States v. Bravo*, 203 F.3d 778, 780 (11th Cir.2000)).
[17] *Id.*

3

is eligible for § 3582(c)(2) relief, it must consider the § 3553(a) sentencing factors and public safety in determining whether such a reduction is warranted, and, if so, to what extent."[18]

"A defendant's post-sentencing conduct does not warrant an automatic denial of a sentence reduction."[19] Where there has been post-sentencing misconduct "[t]his Court . . . should not endeavor to punish any misconduct through a denial of defendant's request for a reduction in his sentence, but th[is] Court [should] consider [the] defendant's misconduct as a factor in considering whether a reduction in sentence is appropriate."[20]

### B. Before his termination from Dismas Charities, Mr. Alloway was a good resident who followed the rules.

After Mr. Alloway was released from FCC Yazoo City, Mississippi, he arrived at Dismas Charities, a Residential Reentry Center in Montgomery, AL, on January 7, 2015.[21] On April 29, 2015, he was terminated from Dismas Charities for possession of one packet of synthetic marijuana.[22] This infraction should not prevent Mr. Alloway from receiving a sentence reduction or limit the reduction he receives because the Dismas Charities Report indicate that he was a good resident before this infraction. Furthermore, this infraction was not a violent offense.

---

[18] *Vives*, No. 15-10311, 2015 WL 5062307, at *1 (citing *United States v. Williams*, 557 F.3d 1254, 1256 (11th Cir.2009); U.S.S.G. § 1B1.10, comment. (n.1(B)(i), (ii)); see U.S.S.G. Section 1B1.10 (c) App. Note 1 (b)(ii) ("Public Safety Consideration.—The court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment in determining: (I) whether such a reduction is warranted; and (II) the extent of such reduction, but only within the limits described in subsection (b).").

[19] *United States v. Jenkins*, 2009 WL 1444438, at *4, n 5. (E.D. Pa. May 22, 2009) (citing *United States v. Ayala*, 540 F.Supp.2d, 676, 680 (W.D.Va.2008)) (granting a retroactive sentence reduction over the government's objection to the reduction because of the defendant's disciplinary infractions in prison for "assault without serious injury" and "fighting with another person.").

[20] *United States v. Miller*, 2008 WL 782566 at *3 (E.D. Tenn Mar. 21, 2008).

[21] Exhibit 1, Dismas Charities Report, p.1.

[22] *Id.* at p. 2 ("Resident Alloway received one disciplinary during his tenure with Dismas. Resident Alloway was counseled about his actions after each incident. Resident Alloway's tenure at Dismas was terminated for violation of Prohibited Act 113, possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by medical staff. Resident Alloway was found in possession of Synthetic Spice-2 (Crazy Monkey).").

The Dismas Charities termination letter indicates that Mr. Alloway had successfully maintained full time employment at Koch Foods since February 23, 2015.[23] He had been paying money toward his subsistence at Dismas Charities house and he was saving money.[24] And "[a]t the close of his residency, [Mr.] Alloway [had] received fifteen (15) urinalysis screens, which were [sic] returned negative results."[25]

Mr. Alloway was also attending the Transitional Drug Aftercare Program on a weekly basis, and he was not having "any issues with complying with the rules and regulations outlined by Dismas."[26] Mr. Alloway was also participating in 48 hour Home Passes, all while successfully passing fifteen drug screenings.[27] On March 19, 2015, Mr. Alloway was reprimanded for having an unauthorized cellular telephone at the facility.[28] He was also punished with twenty hours of extra duties.[29]

### C. Mr. Alloway's possession of synthetic marijuana was triggered by the untimely death of his close friend.

Although Mr. Alloway was doing well at Dismas Charities, the tragic and sudden death of his close friend caused him to act improperly while coping with his grief. Federal Defender Investigator Rena Ross met with Mr. Alloway about many things, including his termination from Dismas Charities.[30] Mr. Alloway notified Ms. Ross that the only person who continued to support him after he was incarcerated was his friend, Ms. Tarsha Davenport.[31] When he was being held at the Montgomery County Jail, Ms. Davenport would come to see him on a regular basis. But once

---

[23] Exhibit 1, Dismas Charities Report, p. 1.
[24] *Id.* at 2.
[25] *Id.* at 1.
[26] Exhibit 2, Composite of Dismas Charities Case Notes Reports.
[27] *Id.*
[28] Exhibit 4, Disciplinary Report for Unauthorized Cellular Telephone.
[29] *Id.*
[30] Exhibit 3, Affidavit of Rena Ross.
[31] *Id.*

5

he was transferred to FCC Yazoo City, she was no longer able to visit him because of the distance. She would, however, write letters to Mr. Alloway and put money in his prison account.[32]

"Throughout their friendship Mr. Alloway knew that Ms. Davenport suffered from diabetes and heart disease."[33] After Mr. Alloway was transferred to Dismas Charities in January, he and Ms. Davenport made plans to visit with each other. Before they could confirm visitation arrangements, Ms. Davenport died at the age of 30 years old. [34]

Ms. Davenport's death effected Mr. Alloway deeply. He told Ms. Ross that "for as long as he can remember, when he has been unable to cope with an issue, he has turned to marijuana."[35] Mr. Alloway told Ms. Ross that "he realized a long time ago that smoking marijuana was not a solution to his problems and [he] regrets the bad choice he made in dealing with the situation."[36]

### D. Mr. Alloway has already been punished by the Federal Bureau of Prisons for his possession of synthetic marijuana.

After Mr. Alloway was caught with synthetic marijuana, Federal Bureau of Prison officials investigated the incident and determined a suitable punishment for Mr. Alloway.[37] A FBOP Incident Report shows that Mr. Alloway tried to deny that the package of synthetic marijuana belonged to him.[38] The Incident Report does not indicate that Mr. Alloway was asked why he possessed the synthetic marijuana. The Incident Report indicates that FBOP officials determined that the appropriate punishment for Mr. Alloway's possession of synthetic marijuana was "Loss of Good Conduct Time."[39] In addition to this punishment, Mr. Alloway was discharged from Dismas Charities and placed in custody at Elmore County jail, where he currently remains.

---

[32] Exhibit 3, Affidavit of Rena Ross.
[33] *Id.*
[34] *Id.*
[35] *Id.* at 3.
[36] *Id.*
[37] Exhibit 5, FBOP Incident Report.
[38] *Id.*
[39] *Id*. at 3.

**E. The day before Mr. Alloway was caught with synthetic marijuana, he tested negative for drug use.**

Mr. Alloway was caught with synthetic marijuana on April 29, 2015. There are no records indicating that the package of synthetic marijuana was open or that the contents had been used. A Dismas Charities Urine Surveillance Report shows that, on April 28, 2015, Mr. Alloway was drug tested for ten different substances, including marijuana.[40] He tested negative for all substances.[41]

**F. None of Mr. Alloway's pre-sentencing or post-sentencing conduct involves violence or indicates that he is a danger to the community.**

According to U.S.S.G. § 1B1.10, this Court's public safety consideration must include consideration of the "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Mr. Alloway's pre-sentencing conduct shows that he is not a danger to the community. Mr. Alloway is in the lowest criminal history category, which is I. His Presentence Report indicates that, in 2008, when he was 19 years old, he pleaded guilty to a noise ordinance and he was acquitted of a third degree domestic violence charge.[42] In 2011, he was arrested and prosecuted in state court for possession of powder cocaine.[43]

None of Mr. Alloway's post-sentencing conduct has been violent. The Dismas Charities records indicate that none of his post-sentencing conduct was violent. His FBOP Progress Report shows that he did not violate any rules or engage in any conduct that required disciplinary action the entire time he was in FBOP custody.[44] His FBOP Progress Report indicates that he "[d]emonstrate[d] desirable qualities of citizenship with the Therapeutic Community by proper

---

[40] Exhibit 6, Dismas Charities, Inc. Urine Surveillance Form.
[41] *Id.*
[42] Doc. 400 at ¶28, ¶32.
[43] *Id.* at ¶31.
[44] Exhibit 7, FBOP Progress Report and Inmate Discipline Data Form.

7

attitude, thinking and behavior, at all times demonstrating prompt attention to taking responsibility for his action and following all rules and regulations."[45]

There is no evidence that release of Mr. Alloway would create a danger for the community. There is no evidence warranting this Court to deny or limit Mr. Alloway's sentence reduction on public safety grounds.

### III.   CONCLUSION

Mr. Alloway's records demonstrate that he has been trying in earnest to live his life positively, but he has had some minor set-backs. He has acknowledged that he acted improperly while at Dismas Charities. He has been punished by FBOP for his improper conduct. None of that conduct was violent or dangerous. Neither his pre-sentencing nor his post-sentencing conduct warrants that this Court deny or limit his sentence reduction under Amendment 782.

Dated this 30th day of November, 2015.

          Respectfully submitted,

          */s/Patricia Kemp*
          **Patricia Kemp, Esq.**
          AL Bar Code: ASB-4592-R80K
          FEDERAL DEFENDERS
          MIDDLE DISTRICT OF ALABAMA
          817 South Court Street
          Montgomery, Alabama 36104
          TEL:   (334) 834-2099
          FAX:   (334) 834-0353

---

[45] Exhibit 7, FBOP Progress Report and Inmate Discipline Data Form.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 2:11-CR-191-MHT** |
| | ) | |
| **CHRISTOPHER D. ALLOWAY** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                               Respectfully submitted,

                                                                */s/Patricia Kemp*
                                                                **Patricia Kemp, Esq.**
                                                                AL Bar Code: ASB-4592-R80K
                                                                Federal Defenders
                                                                Middle District of Alabama
                                                                817 South Court Street
                                                                Montgomery, Alabama 36104
                                                                TEL:   (334) 834-2099
                                                                FAX:   (334) 834-0353